UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAMERON H.,[1]

                                         Plaintiff,                   Case # 20-CV-363-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.

## INTRODUCTION

Plaintiff Cameron H. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 8. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

In January 2017, Plaintiff applied for SSI with the Social Security Administration ("the SSA").[2] Tr.[3] 54-55, 129-38. He alleged disability since October 2016 due to paranoia,

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] Plaintiff also filed a claim for disability insurance benefits under Title II, but Plaintiff concedes that that claim "should have been dismissed at the administrative level," and, therefore, the current action in this Court only addresses Plaintiff's SSI claim. *See* ECF No. 7-1 at n.1.

[3] "Tr." refers to the administrative record in this matter. ECF No. 12.

schizophrenia, and psychosis.[4]   Tr. 12, 55-56.   In January 2019, Administrative Law Judge Elizabeth Ebner (the "ALJ") issued a decision finding that Plaintiff is not disabled.   Tr. 9-23.   In January 2020, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the SSA.   Tr. 1-6.   Plaintiff then appealed to this Court.   ECF No. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."   *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).   The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.   42 U.S.C. § 405(g).   "Substantial evidence means more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).   It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."   *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

---

[4] As the Commissioner's brief indicates, there is an inconsistency in the record regarding Plaintiff's alleged onset of disability date.   The application forms in the record state an alleged onset date in October 2015, while the State agency forms and the ALJ's hearing decision provide a date in October 2016.   *See* ECF No. 8-1 at n.1.   Per the Commissioner, the reason for this inconsistency is unclear.   *Id.*   The Commissioner also notes that Plaintiff filed prior claims for disability, the last of which was denied in May 2016, that Plaintiff's "earliest possible un-adjudicated period would have begun in May 2016," and that there is no medical evidence in the record between May and October 2016.   *Id.* Plaintiff does not present an argument for remand based upon the inconsistency in alleged onset date.

II.     **Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  *Id.* § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 416.920(g).  To do so, the Commissioner must present

3

evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 10, 2016.  Tr. 15.  At Step Two, the ALJ found that Plaintiff had the following severe impairments: depression, schizoaffective disorder, and a history of polysubstance abuse in remission.  *Id.*  At Step Three, the ALJ found that these impairments did not meet or medically equal any Listings impairment.  *Id.*

Next, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels but with certain nonexertional limitations.  *Id.* at 16-17.  At Step Four, the ALJ found that Plaintiff had no past relevant work.  *Id.* at 18.  At Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Tr. 19.  The ALJ therefore found that Plaintiff was not disabled.  *Id.*

### II.    Analysis[5]

Plaintiff advances two arguments in support of remand: (1) that the ALJ failed to develop the medical record with any medical opinion evidence whatsoever, and inexplicably failed to order

---

[5] Plaintiff's claim was filed in January 2017.  Therefore, the amendment to the regulations that applies to claims filed after March 27, 2017, does not apply to this case.  *See Raymond M. v. Commissioner*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021) ("The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.").

a consulting examination; and (2) that the ALJ did not perform a proper analysis of Plaintiff's drug abuse and alcoholism.  ECF No. 7-1 at 1.  The Court does not reach Plaintiff's second argument because it agrees that remand is necessary based on the first.

### A.  Legal Standard

A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  To make the RFC determination, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citation omitted); *see also* 20 C.F.R. § 416.945(a).  The ALJ assesses the RFC "based on all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a)(3).

"[A]n RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis; it is only after that may RFC be expressed in terms of the exertional levels of work."  *Hurley v. Colvin*, No. 6:17-CV-06031(MAT), 2018 WL 1250020, at *3 (W.D.N.Y. Mar. 12, 2018) (citing S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) (quotation marks and alterations omitted)).  A function-by-function analysis requires an assessment of the "claimant's ability to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  Each function must be considered separately."  *Id.*

Remand is not required, however, simply because the ALJ did not conduct an explicit function-by-function analysis.  *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  The ALJ's RFC determination may nonetheless be upheld when her analysis "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial

evidence such that additional analysis would be unnecessary or superfluous." *Id.* (collecting cases).  But "[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at 177-78 (citation omitted).

The RFC determination does not have to "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).  But "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted).  When an ALJ does not rely on a medical opinion to formulate the claimant's RFC, he must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Ford v. Colvin*, No. 12-CV-301A, 2013 WL 4718615, at *8 (W.D.N.Y. Sept. 3, 2013).

### B.  Opinion Evidence

Here, the ALJ discussed the following opinion evidence in her RFC determination: (1) the opinions formulated in the Disability Determination Service ("DDS") evaluation rendered on January 18, 2017, Tr. 55-61; and (2) a December 6, 2018 mental RFC questionnaire completed by social worker Keriann Alpera, Tr. 448-452.

#### 1.  DDS Opinions

Plaintiff's DDS evaluation included statements from Y. Stocks, SDM ("Stocks") and C. Butensky, PhD ("Butensky").  Tr. 58-59.  Both Stocks and Butensky provided the following statement in the final paragraph of their respective assessments: "[i]t is clear that the claimant had

some impairments during the time period in question however at this time the level of which the combination of those impairments affected his functionality cannot be ascertained."  Tr. 58-59.

In the ALJ's RFC determination, she stated that she afforded "little weight to the opinions formulated in the [DDS] evaluation" because they "were not consistent with the medical evidence of record" and "did not take into account that the [Plaintiff] has mental health issues despite his marijuana abuse."  Tr. 17.

### 2.  Keriann Alpera's Opinion

On December 6, 2018, social worker Keriann Alpera ("Alpera") examined Plaintiff and completed a mental RFC questionnaire.  Tr. 448-52.  In response to that questionnaire, Alpera indicated the following with respect to whether Plaintiff possessed the mental abilities and aptitudes needed to do unskilled work: "[w]e are unable to answer any questions related to [Plaintiff's] ability to work as we have never witnessed him in a work setting."  Tr. 450.  Regarding whether Plaintiff had the mental abilities and aptitudes required to perform semiskilled and skilled work, Alpera gave a similar statement: "[w]e are unable to answer any questions related to his ability to work."  Tr. 451.

On a portion of the questionnaire that asked whether Plaintiff had "a low IQ or reduced intellectual functioning," Alpera wrote "[w]e are not sure if he has any intellectual delays."  Tr. 451.  Alpera further indicated that she was "unable to assess" the following: how often Plaintiff's impairments or treatment would cause him to be absent from work; whether Plaintiff could engage in full-time competitive employment on a sustained basis; and whether Plaintiff could manage benefits in his own best interest.  Tr. 452.  Alpera's opinion did not include an assessment of Plaintiff's ability to perform physical work-related activities.  *See* Tr. 448-52.

The ALJ did not assign a specific weight to Alpera's opinion.  In her one-paragraph discussion of Alpera's findings , she noted the following: (1) that Alpera assessed Plaintiff with a global assessment of functioning rating of 65; (2) that Alpera found that Plaintiff suffers from thoughts of suicide, blunt affect, difficultly thinking, substance dependence, paranoia, illogical thinking, decreased sleep, hallucinations, flight of ideas, and impulsive behavior; and (3) that Alpera "did not provide any opinions related to the [Plaintiff's] functional abilities."  Tr. 17.

### C.  RFC Determination

The ALJ determined that Plaintiff retains the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: cannot work at unprotected heights and cannot be exposed to dangerous moving mechanical parts; limited to simple routine repetitive tasks; limited to simple work related decisions; only occasional interaction with supervisors, and co-workers; only can handle occasional changes in the work setting; and no interaction with the public but can work within proximity to the public.  Tr. 16.

It is unclear to the Court how the ALJ made this determination as the record contains scant opinion evidence and the treatment notes contain only raw medical data.  As to Plaintiff's physical capacity, the DDS evaluation statements of Stocks and Butensky each noted that "[n]o physical allegations are noted."  Tr. 58-59.  The ALJ afforded "little weight" to these evaluations without explaining how they led her to the RFC determination set forth above.  As to Plaintiff's mental capacity, there is no medical opinion as to his ability to perform mental work-related activities because, as discussed above, Alpera's questionnaire stated in numerous places that she was unable to assess Plaintiff's mental aptitudes and abilities to work.  Tr. 448-52.

Because the ALJ did not rely on a medical opinion to formulate Plaintiff's RFC, she should have performed a function-by-function analysis of Plaintiff's work-related capacity.  Although the

ALJ summarizes and cites some of the record medical evidence, she does not tie that evidence to the physical and mental demands of full-time competitive work.  She notes, for example, that Plaintiff can walk five miles, can lift approximately 100 pounds, cleans around the house, prepares meals, uses a computer daily, and that his medication has led to a decrease in his auditory hallucinations.  Tr. 18.  But the ALJ does not explain how this evidence supports the RFC determination, and all of the medical records that she cites contain only raw medical data that does not illuminate how Plaintiff's impairments impact his ability to perform work-related functions. *See* Tr. 152-57, 183, 214-16, 316, 323, 327, 330, 453-68.  Thus, it is unclear how the ALJ made the specific findings as to Plaintiff's physical abilities and mental limitations.

Plaintiff's mental health records indicate, *inter alia*, a history of schizoaffective disorder, homicidal and suicidal thoughts, involuntary hospitalizations, and  incidents where "[h]e was making threats to slit the throat of [his] family members," "wanted to throw his aunt out of [a] building," and "said the devil [was] coming out of the television [and] going to kill people."  Tr. 191.  Without a function-by-function assessment relating the record evidence to the requirements of competitive work or reliance on a medical source's opinion as to Plaintiff's functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.  Accordingly, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 7, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 8, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 24, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York